OF THE

# STATE OF NEW JERSEY,

## ·ON APPEAL FROM THE COURT OF CHANCERY,

### AND PREROGATIVE COURT.

### MARCH TERM, 1891

———— ▬ ————

DANIEL LODOR, appellant,

*v.*

.JAMES McGOVERN and THE INHABITANTS OF THE CITY OF
TRENTON, respondents.

1. An owner of land abutting on a street whose road-bed is being paved
'in an imperfect manner by a contractor with the city, has a standing in equity
to restrain the common council from paying for such work in cases in which
·such land-owner will be assessed in part for such cost.

2. The sole relief in such case is an injunction restraining the council from
paying for such imperfect work before a trial at law.

3. The bill should be for the other land-owners similarly situated as for
·complainant.

4. The bill should show that the common council unreasonably refused to
·contest the bill of contractor.

275

On appeal from a decree in *McGovern* v. *Lodor*, advised by Vice-Chancellor Bird, granting a perpetual injunction, as prayed in complainants' bill.

*Mr. William M. Lanning*, for the appellant.

*Mr. Samuel Walker, Jr.*, and *Mr. Garret D. W. Vroom*, for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

The characteristic facts constituting the basis of this litigation may be expressed in a few words. The city of Trenton entered into a contract with Mr. Lodor, who is now the appellant, for the paving by him of the road-bed of one of its streets, the work to be done in a designated manner and with specified materials. The respondent, Mr. McGovern, is the owner of a lot abutting on that portion of the street so to be improved, and, by reason of certain provisions in the charter of the city, he will be liable to be assessed for a part of the cost of such paving; and his complaint in his present bill is, that this work is being done by the appellant imperfectly, both with respect to materials and skill, in violation of his contract, and that the city, unjustly and to the manifest damage of the complainant, acquiesces in such misconduct, and is ready to pay for the work at the stipulated rate.

Upon the assumption that this undertaking is being treated in this objectionable manner, it is manifest that the complainant, Mr. McGovern, will sustain a wrong, unless he shall have judicial succor, for he will ultimately be compelled to pay for defective and inferior work and materials at the same rate as though they were perfect and superior. For such a wrong there must be a legal remedy of some sort, and it is obvious that in a common-law court such redress cannot be obtained. Before such tribunals the complainant could not in any mode present the question whether this work had been properly done or not; for it has

Lodor v. McGovern.

been repeatedly decided by the courts of this state that a land-owner thus situated cannot raise such an issue after such work has been done and its cost has been or is being assessed. Neces-sarily the citizen thus oppressed has the right to appeal to a court of equity for protection, and, consequently, the legal authority of McGovern to file this bill by force of the circumstances nar-rated must be unquestionable. The principle referred to was declared by Chancellor Zabriskie over twenty years ago in these words, viz. : " The only remedy in such a case, if the city authori-ties will not resist the claim, is in equity. If the land-owners stand by and see the city pay the contractor they can have no relief against the assessment. This was so held by the court of errors in case cited by the counsel of the defendant. *The State* v. *Jersey City, 5 Dutch. 441.*" Equitable jurisdiction was exercised in similar situations in the cases of *Bond* v. *Newark, 4 C. E. Gr. 376 ; Schumm* v. *Seymour, 9 C. E. Gr. 144,* and in *Liebstien* v. *Newark, 9 C. E. Gr. 202.*

But while the standing of the complainant in the tribunal to which he has appealed is not open to doubt, the important ques-tion necessarily supervenes as to what is the nature and scope of the relief to which he is entitled.

This inquiry, it would seem, will be answered as soon as it shall have been precisely ascertained what is the wrong with which the complainant was and is threatened. Such wrong is plainly manifested on the face of his bill; it is, in a word, this : that the city authorities intend to pay the bill of this contractor at full contract prices, although the work and materials furnished by him are grossly imperfect. That this is the entire context of the complainant's grievance- is obvious from the fact that if the municipal authorities had exhibited the opposite purpose—that is, had declared that the contractor was in default, and that they would not pay until the job had been executed according to stipulation—the complainant would have been destitute of all right to intervene in the affair, either at law or in equity. If the city, in its answer in this case, supported by its proofs, had shown that it intended to contest the contractor's right to these moneys, it appears to be indisputable that such showing would

have utterly exploded the entire ground of equitable jurisdiction. In the face of such a demonstration the complainant would have been stripped of every vestige of rightful *status* in a court of equity, and as a corollary, therefore, it follows that if he shall be protected against a voluntary payment of this money by the city, he will receive the complement of relief to which he is entitled.

And beyond this bound we think that in this class of cases the court of chancery has no jurisdiction. It has no right in the present instance to try and definitely settle the question between the city and Mr. Lodor whether their contract has been, or is being, executed according to its terms. In such a contest there is no quality that in the faintest degree subjects it to equitable cognizance; for it is the common case of a dispute respecting the performance of ordinary labor. For the breach of an undertaking of this kind the remedy at law is convenient and on all sides adequate. Indeed, it is so complete that, in a legal forum, the contractor can recover nothing unless he can show substantial compliance in every particular with his stipulations, or if the promisee shall have accepted the imperfect work he can, as a general rule, exact a diminution of the agreed price. Under such circumstances, I regard it as the universal rule that such contracts, under usual conditions, cannot be enforced in a court of equity; for to sanction such a jurisdiction would be to revolutionize the entire course of judicial procedure in this state. It will be noticed that in this instance the juncture is presented of an alleged refusal of a contractor to make his work conform to the terms of his agreement, and, if equity can intervene in such a situation, so it can in every case in which a mechanic is deviating from his stipulations, and thus, when an injunction becomes incidentally necessary, the chancellor is made the superintendent of the universal labor of the state. Such a doctrine would be abnormal, and would tend to obliterate or confuse the boundary line that separates the jurisdictions of our legal and equitable tribunals.

Nor, in this connection, should it be overlooked that the assumption by the court of chancery of the right to formally settle the present litigation as between the city and this con-

tractor has deprived the latter of a prerogative that is justly esteemed of the utmost importance. This is the position of things : The contractor asserts, and is ready to maintain before the proper forum, that he has in every particular performed his agreement; his right is undoubted to have that contention, if it be in dispute, settled by a jury ; but the complainants insist that the city should not voluntarily admit and pay this claim. But in such a proposition, even if established, how is it that the contractor is to be deemed to have forfeited his right to a trial by the country ? In point of fact, this controversy is between the complainant and the city. No fraud is alleged or proved, and if the city is willing·to pay the contractor, certainly such willingness cannot be imputed to the latter so as to occasion a forfeiture of his rights.

In fine, bills of this sort are pure injunction bills, and will not, in a collateral way, draw to equity cognizance over controversies that are alien to its genius and its methods of procedure. It is not true, by any means, that when a court of conscience has acquired cognizance for one purpose, it thereby acquires cognizance over the entire controversy for all purposes. In the case before us, the appropriate litigants are the city, on the one hand, and the contractor on the other ; their forum is the legal one, and the complainant being interested only to the extent that the moneys in question should not be voluntarily paid by the city, cannot change the forum for the purpose of settling the main controversy—he cannot take away from the city and the contractor their right to have the matter in question determined by a common law court. In the case of *Brown et al.* v. *Edsall et al.*, *1 Stock. 257*, it was properly declared by the chancellor that " the court of chancery in this state has never adopted the principle that, because its jurisdiction has once rightfully attached, it will retain the cause, as a matter of right, for the purpose of complete relief." It is conceived that in no imaginable case would the divergence from sound principle be wider than to apply in the present instance the rule that when a court of equity has acquired jurisdiction to grant an injunction for a special purpose it may go on and decide all the issues. The present complainant can-

not intervene except in the degree necessary for his own protection, and he cannot, in a collateral way, become the sole *arbiter litis,* and against the will of the real litigants transport them from the legal to the equitable tribunal.

There are, it is true, cases in this line in our reports in which the entire cause was disposed of in equity, but this was done without objection and without consideration of the principle here discussed. Such cases, so far as they may appear to conflict with the rule here established, must be considered to be overruled.

The foregoing considerations have led this court to the conclusion that the present decree appealed from should be reversed.

But as we think, from the evidence in the case, that the appellant's claim is open to question, and that he should not be paid for the work done by him under present circumstances, we are further of opinion that the city should be enjoined from making such payment of any of the moneys that are alleged to have accrued under the contract in question, or which may hereafter be alleged to have accrued by force of the contract in question, until such injunction shall have been dissolved or the appellant shall have established his right thereto by a suit at law. We also direct that the decree should contain a provision giving the complainant in the court of chancery the right to intervene and make defence in such action, but at his own risk with respect to costs, in case the city shall notify him that it will not make defence therein.

With respect to the formal errors to which exception was taken at the argument, we are of opinion that the bill should have been exhibited for the relief of the complainant, and also for all the other land-owners similarly situated who might desire to come in. This was a defect in the present procedure, and it was objected to in the answer. But that exception became inoperative when an amendment in that respect was ordered. If such amendment was insufficient with regard to forum or extent, or the persons named in it as parties were not actually brought into court, objections on these accounts should have been taken before trial.

So, we further think that it was necessary for the complainant to show distinctly in his bill that the common council had been called upon to perform the duty, the not doing of which formed the basis of complaint, but we are of opinion that in view of the answer and proofs it sufficiently appears that the attitude of the common council was antagonistic to the complainant's position, and that, consequently, the objection cannot prevail on final hearing.

The city should be directed to pay the costs of the complainant in the court of chancery.

No costs are allowed on the appeal.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, REED, VAN SYCKEL, SMITH, WHITAKER—10.

*For affirmance*—None.